Department of Justice

Regional Administrative Remedy Appeal

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: **Jackson  Michael  T.**   **11873-007**   **C-1 217c**   **Rivers Corr Inst.**
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL** The reason for appeal is simple the incident I stated did occur (see informal Response). And after speaking with various staff (those involved) my sought after remedy is based soley on policy see step 1, and step 2 I clarified my intention in my step 2 but was again totally misunderstood I simply asked the institution to follow it's own policy (RCI policy 15.003) or (GEO policy) # 14.1-2 or (BOP policy 5360.08) based on the first establishment of a proper religious diet, then making it openly available to those whom it applied too. So as to one allow proper practice of one's religion and to safe guard against anomalies from being exposed to things which violate one's faith.

_10-18-05_        _Michael Jackson_
DATE                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

I attached this slip of paper only to point out I highlighted certain sections on about three of the forms present in my complaint. One shows pork was present in the kitchen, two it was served but they claimed it was to staff, three then they claimed it was immediately disposed of, Four they totally ignored my issue and the policies I sight. Clearly I want a religious diet so that I can't be exposed to foods like the food in question.

RECEIVED
OCT 2 8 2005
RIVAMATION
AGEMENT BRANCH

_____        REGIONAL DIRECTOR
DATE

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
ORIGINAL: RETURN TO INMATE        CASE NUMBER: _393451-R1_

**Part C - RECEIPT**        CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
DATE                SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)
JUNE 2002
PRINTED ON RECYCLED PAPER

Attachment

Also Rivers provides for four Jewish inmates the kosher diet that their religious laws dictate, the Holy Quran has pointed out that a muslim's diet consist of halal or kosher foods only. (see Holy Quran chapter 5:3-5). Rivers has shown religious discrimination by providing the Jews with a proper religious diet and not providing the religious diet with respect to the sunni muslim community at Rivers. As the custodian the BOP is responsible for the D.C. DC felons housed at GEO/Rivers and Rivers has failed to act accordingly. I have grieved this matter through each of the steps and each time the replies were one: erroneous and showed that the respondant was very superficial with the issues, and two: no real investigation occured because the (informal) response admitted that pork was served, and the (formal) responses claim it was not. Which obviously shows a contradiction further my request to establish a proper religious diet for the muslims based on policy and regulation as well as law should have been granted without me having to come to this level. It is with regret that I had to write this but since GEO/Rivers has failed to fullfill their responsibilities in this capacity. It is the BOP who must enforce its policy and remind GEO/Rivers of its obligations. As I stated in the grievances the issue about the (pork beans) is simply a vehicle for the main issue the establishment of a proper BOP establishd 'Religious Diet'.

Michael Jackson 11373-007
P.O. box 630
Winton, NC. 27986

_14_

## REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE:      OCTOBER 31, 2005

FROM:      _James E. Bundl_
           ADMINISTRATIVE REMEDY COORDINATOR
           PRIVATIZATION MGT. BRANCH

TO:        MICHAEL TITO JACKSON, 11373-007
           RIVERS CI   UNT: C   QTR: C01-217L
           P.O. BOX 840
           WINTON,  NC 27986

FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL IS BEING REJECTED
AND RETURNED TO YOU.  YOU SHOULD INCLUDE A COPY OF THIS NOTICE WITH
ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID:        393451-R1    REGIONAL APPEAL
DATE RECEIVED:    OCTOBER 28, 2005
SUBJECT 1:        RLGS FOOD:CERTIFIED/NON-FLESH - DELIVERY/PREPARATION OF
SUBJECT 2:
INCIDENT RPT NO:
REJECT REASON 1: SEE REMARKS.

REMARKS:          THIS ISSUE IS NOT APPEALABLE TO THE BOP.  YOU MUST USE
                  THE GRIEVANCE PROCEDURES AT YOUR FACILITY.

[RECEIVED]  11·8·05  KSP

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Jackson  Michael  T.   11373-007   C-1 (217)   Rivers
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A - REASON FOR APPEAL  I am appealing the management and institution's decision because of the following. The management department for the contract privatization branch stated this is not a BOP issue and that I should settle this here at Rivers (see contract privatization's response) However this is clearly a matter for the BOP, one it was the BOP who assumed custody of me (via. Revitalization Act 1997) and in being in the BOP's custody means by law they (the BOP) must provide for me and DC DC prisoner's in their custody as stated in the (Revitalization Act 1997) as they provide for prisoners in the BOP's prisons. It was the BOP who contracted the DCDC prisoners to GEO (see contract RCI Contract #J1Pc-005) And based on the contract GEO (Rivers) has agreed to follow the BOP rules and regulations along with All federal laws and regulation and state and local laws. GEO (Rivers) has failed clearly to follow the BOP's rules in the following program statements and has failed to follow its own policies. BOP p.s. 5360.08, 4700.04 both are in concert of the establishment of a Religious Diet program for the Sunni Muslim community here at Rivers. The GEO policies are as followed! RCI policy 15.003, GEO policy procedure manual 14.1-2. All of which state that a Religious Diet should be established and set an acceptable standard. BOP p.s. 4700.04 chapter (7) page (1) details that diets requirements Also CFR 548.20 stated what all the forgoing policies state. As the legal custodian of All DC DC prisoners it is the BOP's responsibility to enforce its policies here at Rivers and to make sure that Rivers GEO follows

11-29-05                    it's own policies properly.          _Michael Jackson_
DATE                                                              SIGNATURE OF REQUESTER

**Part B - RESPONSE**



RECEIVED

NOV 13 2005

ADMINISTRATIVE REMEDY BRANCH

_____                                    _____
DATE                                                GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                          CASE NUMBER: 393451

**Part C - RECEIPT**

                                           CASE NUMBER: _____

Return to: _____
     LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

_____                                    _____
DATE                                                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN                    PRINTED ON RECYCLED PAPER                    BP-231(13)
                                                    JUNE 2002

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: DECEMBER 14, 2005

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : MICHAEL TITO JACKSON, 11373-007
      RIVERS CI    UNT: C    QTR: C01-217L
      P.O. BOX 840
      WINTON,  NC 27986

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID       : 393451-A1       CENTRAL OFFICE APPEAL
DATE RECEIVED   : DECEMBER 13, 2005
SUBJECT 1       : RLGS FOOD:CERTIFIED/NON-FLESH - DELIVERY/PREPARATION OF
SUBJECT 2       :
INCIDENT RPT NO:

REJECT REASON 1: SEE REMARKS.

REMARKS         : WE CONCUR WITH THE PRIVATIZATION MANAGEMENT BRANCH.
                  YOU WILL NEED TO ADDRESS THIS ISSUE WITH RCI.

19.  [**DIETARY PRACTICES** §548.20

  a.  The Bureau provides inmates requesting a religious diet
reasonable and equitable opportunity to observe their religious
dietary practice within the constraints of budget limitations and
the security and orderly running of the institution and the
Bureau through a religious diet menu.  The inmate will provide a
written statement articulating the religious motivation for
participation in the religious diet program.

     (1)  **Compon**                          ram will consist of
two distinct com

          ▪    O                           ious dietary needs
               t                            main line, which
               i                            ccess to the
               s                            ot bar is part of
               t                            nstitutions where
               m                            ys, local
               p                            or providing the
               n

          ▪    Th                           dietary needs
               th                           ligiously
               ce                           cess to the salad
               ba                           part of the Food
          Service Program).

     (2)  **Requests and Interviews.**  Inmates wishing to
participate in the religious diet program will make the request
in writing.  Chaplains will conduct an oral interview and
complete the interview form within two working days of the
request.  This will determine how participation in the religious
diet program is best accommodated given the inmate's religious
preference and beliefs.

     Inmates will review and sign a copy of the completed
interview form.  Chaplains will document an inmate's refusal to
sign the document.  When the interview is completed, the
chaplaincy team will review the request to determine how to
accommodate the inmate's stated religious dietary needs.

     (3)  **Notification.**  Inmates will be notified in writing of
the accommodations for which they are approved, based on their
religious dietary needs (BP-S700).  Completed forms will be
placed in section 6 of the Inmate Central File.

*Exhibit F CFR 548.20*

PS 5360.08
5/25/2001
Page 14

(4) **SENTRY Record.** The chaplain is responsible for
entering pertinent information for each inmate approved to
participate in the religious diet program into the SENTRY
religious diet participant list within 24 hours of approval.
Food Service will begin serving those approved for the certified
processed food line normally within two days of SENTRY
notification.

(5) *Monitoring.* Both chaplains and food service staff will
monitor the SENTRY religious diet participant list daily to
assure that all eligible inmates are served religious diet meals
with minimal delay upon redesignation. Inmates who are not
approved for the certified food line may request a re-interview
at six-month intervals.

Chaplains will escort contract chaplains to the religious diet
food preparation area randomly to monitor the preparation and
serving of food items and compliance with religious dietary laws.

**[b. An inmate who has been approved for a religious diet menu
must notify the chaplain in writing if the inmate wishes to
withdraw from the religious diet. Approval for an inmate's
religious diet may be withdrawn by the chaplain if the inmate is
documented as being in violation of the terms of the religious
diet program to which the inmate has agreed in writing. In order
to preserve the integrity and orderly operation of the religious
diet program and to prevent fraud, inmates who withdraw (or are
removed) may not be immediately reestablished back into the
program. The process of re-approving a religious diet for an
inmate who voluntarily withdraws or who is removed ordinarily may
extend up to thirty days. Repeated withdrawals (voluntary or
otherwise), however, may result in inmates being subjected to a
waiting period of up to one year.]**

Inmates who eat only religiously certified foods may not self-
select from the main line or hot bar. Those who are observed
eating from the main line may be removed temporarily from that
component. In addition, those who purchase and/or consume non-
certified foods from the commissary may also be temporarily
removed from that component.

The Warden has authority to remove inmates from and reinstate
them to the program. Ordinarily, this authority is delegated to
the chaplains. Removal is not punitive in nature but provides an
opportunity for the inmate and staff to reevaluate this program's
appropriateness to meet the inmate's demonstrated needs. At the
inmate's request for reinstatement, an oral interview will be
conducted prior to reinstatement.

# CHAPTER 7
## Religious Diets

1. **General Policy.** The increased number of religious groups requesting diets requires a religious diet program that provides equity to all. Common Fare is intended to accommodate inmates whose religious dietary needs cannot be met on the main line. The common fare menu is based upon a 14-day cycle, and is fully certified Kosher. In addition, the menu meets the requirements for Halal. The beverages and food items have been nutritionally analyzed and certified as exceeding minimum daily nutritional requirements. A copy of the Common Fare nutritional analysis is available at each institution and from the Regional and Central Office FSAs. The Common Fare menu that will be used with the Religious Diet Program is located in the Food Service TRM.

2. **Changes.** Changes to the planned Common Fare menu may not be made at the institutional level, except when seasonal availability of specific fresh produce items dictates that temporary substitutions be made.

Under such circumstances, the FSA, with concurrence from the appropriate Associate Warden, may make temporary changes and shall be fully prepared to show that this seasonally prepared substitutions for fresh produce that do not violate any religious dietary laws. The Chaplain shall be consulted if religious questions arise.

3. **Hot Entree Availability.** To the extent practicable, a hot entree shall be available to accommodate inmates' religious dietary needs (e.g. Kosher and/or Halal products. Hot entrees shall be offered three times a week and provided in their **sealed** containers, and served **hot**. Cooking of any other food items is **not permitted** in the Common Fare program.

4. **Religious Requirements.** All foods purchased (except fresh fruits and vegetables as stated in Chapter 9 of the Kashruth) shall be prepared, processed, and certified by a recognized Orthodox Standard, such as: (K in brackets), "CRC". No pork or pork derivatives may be used. All bread and margarine must be labeled Parve for use on the Common Fare tray.

5. **Nutritional Requirements.** Common Fare menus meet the nutritional recommended daily allowances (RDAs). An inmate who selects food from the Common Fare menu may not also select other food from the regular menu, except for beverages and foods from a salad bar (hot bars are not part of the salad bar).

An inmate who does select items from a beverage or salad bar shall do so with the understanding that they may contain items which do not meet that individual's religious dietary laws.

6. **Instant Food and Beverages.** An urn of hot water shall be provided for reconstituting instant beverages and foods. Inmates who are not participating in the Common Fare program may use the urn.

7. **Plates and Utensils.** Ordinarily, Common Fare meals shall be served with disposable plates and utensils. Reusable plates and utensils, which are identified for Common Fare use only, may be used if any other necessary items used in the production of food for the Common Fare diet shall be provided. These items shall be identified for use only in the Common Fare program. Meat and dairy food items and service utensils shall be stored in areas separate from each other. A separate dish pan shall be provided to wash and sanitize these items, if a separate three compartment sink is not available.

8. **Application & Removal**

a. The Chaplain is the approving official for inmate participation and removal in the Common Fare Program. Food Service staff shall use a daily roster indicating a CFTS for notification of Common Fare participants. No writing, signing, or attempt to dissuade an inmate from participating in the program.

b. When an inmate is approved to eat from Common Fare, the FSA shall develop an accountability means by which to ensure integrity for participation.

c. The inmate shall ordinarily begin eating from the Common Fare menu within two days after Food Service receives electronic notification.

d. Staff shall appropriately train and supervise inmates assigned to prepare and serve Common Fare meals.

• An inmate's participation in the program is not affected by temporary placement on a medically prescribed diet or placement in a Special Housing Unit. An inmate approved for Common Fare shall be provided Common Fare meals while in Special Housing or the institution hospital. However, if a medical diet is prescribed, it shall take precedence over the common fare diet.

• If an inmate misses six consecutive Common Fare meals, the FSA shall notify the Chaplain in writing so that the Chaplain may remove the inmate from the program. The decision to remove an inmate rests with the Chaplain.

9. **Annual Ceremonial Meals.** By October 10th each year, the Chaplain shall provide the FSA a schedule of the ceremonial meals for the following calendar year, including the date, religious group, estimated number of participants, and any required food purchases. Ceremonial or commemorative meals shall be served in the food service facility unless otherwise approved by the Warden.

## GEO/RCI ATTEMPT AT INFORMAL RESOLUTION
### (Request for Administrative Remedy)



RECEIVED
JUL 0 5 2005

Date Rcv'd _A.B_
(Staff)

A-2005-011

To: _Ms. Holloman_
(Counselor)

1. Write in this space, briefly, your complaint. Include all details and facts which support your request.

My complaint is in blunt, in the kitchen it has been made (known) to me that specific items such as the pinto beans contain pork products or pork itself, there are a number of items which contain pork that are being used/ Also in conjunction certain foods being served in the kitchen have not passed a USDA food inspection and wear labels stating (ship only to Mexico) and further the food being prepared and served is not healthy or being kept in a sanitary enviornment

2. What action do you wish to be taken to correct the situation?

Monetary compensation for violating my religious tenets, by exposing me to pork products and for the kitchen superinsor to form a proper commantire diet, so as to have what is called a proper religious diet as stated in 5360. series of the BOP policy statements concerning religious practice and diets.

_Michael Jackson_          11373-002          C-1 217          7-5-05
Inmate Name/Signature      Reg. No.           Unit/Bed         Date

3. State Clearly staff efforts to resolve the matter informally. Be specific, but brief and provide to inmate.

Pinto Beans served to inmates are dry beans. The beans in question are for staff use only. Food cannot be purchased by this facility unless it passes USDA approval.

********************************************************************

The Informal Resolution Was/Was Not (circle one) accomplished for the above noted reason.

_Michael Jackson_   7-26-05        _A. Brac_   7-6-05
Inmate Signature    Date           Counselor Signature   Date

Revised 01/21/04
pch

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SF 98

U.S. DEPARTMENT OF JUSTICE

FEDERAL BUREAU OF PRISONS

| TO: (Name and Title of Staff Member<br>BOP Contract Monitor, Mr. Christen | DATE: 7-14-05 |
|---|---|
| FROM:<br>Michael Jackson | REGISTER NO:<br>11373-007 |
| WORK ASSIGNMENT:<br>Recycling | UNIT:<br>C-1 217        Col-217 L |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken. If necessary, you will be interviewed in order to successfully respond to your
request.)

I'm requesting that you initiate in the kitchen a Common fare diet
as stated in BOP program statement 5,360.08, As I am a Sunni Muslim
the religious diet or veggie diet as it is called does not meet the
requirements of its equivalent in the BOP, the religious diet in the
BOP is infact the Common Fare diet mentioned in BOP p.s. 5,360.08
as stated on page 12 the abovementioned Policy Statement the authorizati
for the common fare diet is in three places have minimal; BOP p.s.
5,360.08, BP-S 625.053, RCI policy. This matter was directed
to the institution kitchen supervisor, and the chaplain, who both indicated
that they were unaware of it, so as the BOP representative at RC
I put this matter to you. For resolution

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 8
and BP-S148.070 APR 94



**U.S. Department of Justice**

*Federal Bureau of Prisons*           217 L

---

Jackson, Michael
Reg. No.: 11373-007
Unit: C01-217L

### Inmate Request to Staff Member Response

This is in response to your Inmate Request to Staff dated July 14, 2005, wherein you request that you be given a Common Fare diet in lieu of the religious diet offered at Rivers.

This request should be addressed by an official at the Rivers Correctional Institution. Therefore, I am forwarding your request to the Warden to obtain an appropriate response to your concerns.

_____          7/20/05
Thomas R. Christensen              Date
Senior Secure Institution Manager



DELIVERED JUL 2 5 2005

## Rivers Correctional Institution

Date:      July 21, 2005

To:        Jackson, Michael
           Reg# 11373-007

This is in response to your Inmate Request to Staff dated July 14, 2005 in which you are inquiring about a common fare diet.

The diet that is served at this institution is a common fare diet. It is called a Diet For Health which consist of approximately 2200-2600 calories per day. The required amount of calories are approved by the American Diabetes Association.

This is a pork free facility and before any special diet can be implemented by the Food Service Department the Chaplin must approve them. (Vegetarian and religious meals)

_7-22-05_
Date

_George Snyder, Warden_

7-26-05
RECEIVED



**Correctional Programs**
**Administrative Remedies**

# Rivers Correctional Institution
## Step 1 Administrative Remedy Form

Paso 1Forma De Remedio Administrativo

| Name: Michael Jackson<br>Nombre: | Number: 11373-007<br>Numero: |
|---|---|
| Date: 7-26-05<br>Fecha: | Housing Assignment: C-1 217L<br>Unidad Asignada: |

| For Official Use Only - Para Uso Oficial Solamente | | | |
|---|---|---|---|
| Date Rec'd:<br>7/26/05 | Complaint #:<br>05-____-211<br>PH | Staff Assigned:<br>Phillips | Date Due:<br>8/8/05 |

| Complaint - Reclamo |
|---|

Describe your complaint in the section below. Be as concise as possible, but be sure to include enough identifying data to assist in through investigation (e.g. dates, names, locations, times, etc....) Attach one (1)additional page if necessary, and the Informal Resolution Form with any other supporting documentation.

Describa su telaino en la seccion de abajo. Dea lo mas breve posible, pero asegurese de incluir suficiente informacion para asistir en una completa investigacion (pe.. Fechas, nombres, ubicaciones, tiempos, etc....) Agregue una pagina si es necesario.

My complaint was not properly addressed as it stands I was exposed to pork in some of the food that was served to a dinner meal the item which contained the pork was atleast: (Pinto beans with pork) and after further review my issue about the Common Fare diet BOP. PS-5360.08 was left unremarked and totally unaddressed. See BOP. PS. 5360.08 and the issues on the informal complaint. I have addressed both. Issues with kitchen staff who assured me the pork will not be served again but as I started it didn't happen on her shift. Therefore it could happen again and do to the nature of my diets I could very well be exposed again.

_Michael Jackson_
Inmate Signature

Administrative Remedy
Step 1 – Response


Date Filed: 7-26-05                                    Remedy ID No. 05-211
Jackson, Michael
11373-007


This is in response to your Step 1 Administrative Remedy dated July 26, 2005 in which you allege that you were exposed to pork.  Specifically, you are requesting to be compensated.

A case of pinto beans which contained pork was received into the facility.  That case of beans was immediately disposed of and not served to the population.

This is a pork free facility and the Food Service Department will continue to order pork free food and inspect products when they arrive at this facility.

The diet that is served at this institution is a common fare diet.  It is called a Diet For Health which consist of approximately 2200-2600 calories, the required amount of  calories for any inmate on a special diet at this institution, which has been approved by the American Diabetes Association and implemented by our corporate licensed dietitian.

Your remedy is denied.

If you are not satisfied with this response, you may obtain a Step 2 from your counselor.  As per R.I. 12.006,  Administrative Remedies, "Step 2 forms" must be completed and submitted within five (5) days of the date of the Step 1 response.


_____                    _____
            8/9/05                                    Julian Phillips, Business Manager
            Date



**GLOBAL EXPERTISE IN OUTSOURCING**

**Correctional Programs**
**Administrative Remedies**

## Rivers Correctional Institution
## Step 2 Administrative Remedy Form
Paso 1Forma De Remedio Administrativo

| Name: Michael Jackson | Number: 11373-007 |
|---|---|
| Nombre: | Numero: |
| Date: 8-16-05 | Housing Assignment: c-1 217c |
| Fecha: | Unidad Asignada: |

### For Official Use Only - Para Uso Oficial Solamente

| Date Rec'd: | Complaint #: | Staff Assigned: | Date Due: |
|---|---|---|---|
| 8|16|05 | 05-211 | Phillips | 8|23|05 |

### Complaint - Reclamo

Describe your complaint in the section below. Be as concise as possible, but be sure to include enough identifying data to assist in through investigation (e.g. dates, names, locations, times, etc....) Attach one (1)additional page if necessary.

Describa su telaino en la seccion de abajo. Dea lo mas breve posible, pero asegurese de incluir suficiente informacion para asistir en una completa investigacion (pe.. Fechas, nombres, ubicaciones, tiempos, etc....) Agregue una pagina si es necesario.

Obviously I've been grossly misunderstood so I will be blunt: one I cited a BOP policy about commentate diet which is another name for Religious Diet Bop ps. 5360.07- now 5360.08, two; there were beans containing pork served in this institution and Geo policy procedure 15.003 says (no pork) will be served as I stated it was used to substitute an item than ran out at dinner back in June/early July. The direct issue is I am a Sunni Muslim my religion requires strict dietary requirements. Food has to be properly slaughtered and prepared as stated in the Holy Quran chapter 5: 3 and verse 6 either Halal food or Kosher. RCI policy 15.003 states the religious diet policy clearly so does GEO policy Procedure 14.1.2 - so does Bop 5360.08. I wrote every official who has something to do with this issue and every time I was either sent to someone else or simply misunderstood I was directly disrespected by Ms. Wolfe because I sent her a

*Michael Jackson*
Inmate Signature

staff request concerning this issue.

I am requesting that a proper Religious diet be established based on the afore mentioned policys.

Administrative Remedy
Step 2 – Response

Date Filed: 8-18-05                          Remedy ID No. 05-211

Jackson, Michael
#11373-007

This is in response to your Step 2 Administrative Remedy dated August 16, 2005
which you allege that you were misunderstood concerning the answer you
received in the Step 1 Administrative Remedy in reference to a common fair diet
and pork served at this institution.

A case of pinto beans which contained pork was received into the facility. That
case of beans was immediately disposed of and not served to the population.
This is a pork free facility and the Food Service Department will continue to order
pork free food and inspect products when they arrive at this facility.

The diet served at this institution have been approved by the American Diabetes
Association and implemented by GEO Corporate Dietitian. It is called a Diet For
Health which consist of approximately 2200-2600 calories.

After a thorough review of the circumstances pertaining to your requested
Administrative Remedy, we find that there is no evidence to support your
grievance.

Based on the above information and facts, your request for Step 2 Administrative
Remedy is denied. You have exhausted all of your Administrative Remedies at
this level.

8-19-05
_____                          _____
Date                                     George Snyder, Warden

## RIVERS CORRECTIONAL INSTITUTION

| | |
|---|---|
| **POLICY NUMBER: RCI-15.003**<br><br>**REVISION DATE:  10/22/04** | **ACA STANDARD(S):**<br>4-4318M; 4-4319 |
| **PAGES: 3** | **REFERENCES: None**  6e0 I4, I. 2 |
| **Chapter:  Food Service** | **Subject:  Special Diets** |

I.    **PURPOSE:**

To establish guidelines to insure that restricted diet requirements which have been approved by the appropriate authority, are being met.

II.    **AUTHORITY:**  None

III.    **APPLICABILITY:**  To all Food Service Personnel (Staff and Inmates)

IV.    **POLICY:**

*Therapeutic diets are provided as prescribed by appropriate clinicians. A therapeutic diet manual is available in the health services and food services areas for reference and information.*[4-4318 M]

V.    **PROCEDURE:**

**Medical Diets**

A.    Clinical Diets will be approved by a Registered Dietitian. Documentation of review and approval of nutritional adequacy will be on file.

B.    Medical diets may be prescribed by a facility physician or dentist as part of an inmate's treatment.   Written orders are to be forwarded to the Food Service Manager.

C.    A full range of medical Diets will be set forth in the approved Diet Manual. The Institution will be responsible for writing diet orders consistent with the Diet Manual.

D.    A special diet pattern will be written for each diet ordered.  Portion sizes, foods allowed, snacks and any special preparation requirement will be specified.  These patterns, along with menus for each day will be used in tray



preparation.

E.    The Food Service Manager will maintain a current diet list.



F.    Medical diets will be re-written as dictated by Health Services Staff.

G.    Diet menus will be written to conform as closely as possible to the foods served other inmates.

H.    Medical meals will only be served as medically indicated and never as a reward.

## Religious Diets

A.    **Written policy, procedure, and practice provide for special diets for inmates whose religious beliefs require the adherence to religious dietary laws.** [4-4319] Religious diets must be approved by the Institution's Chaplain or other designated officials. Religious diet orders shall specify exact dietary laws that need to be adhered to.

   •    Meals for detainees, whose religious beliefs require the adherence to religious dietary laws will be approved by the Chaplain or designee.

   •    This diet meal may be consumed on a regular basis and in accordance with established dietary restrictions required by specific religious denominations.

   •    Special religious occasion meals (such as Ramadan) may be approved but not more than once per year or more than as prescribed by a particular religious group.

   •    Religious diets will be composed of regular staple foodstuffs unless specifically approved by the Warden and/or Chaplain or designee(s) and on a registered dietitian's recommendation.

B.    The Food Service Manager will:

   •    Receive the religious diet request form from the Chaplain or his designee. It is the practice of RCI Food Service to provide a general menu that is acceptable to most religious dietary laws.

   •    Keep diets simple and see that they conform as closely as possible to the food served other inmates while adhering to religious dietary laws.

| **GEO** GLOBAL EXPERTISE IN OUTSOURCING | POLICY AND PROCEDURE MANUAL | NUMBER: 14.1.2 |
|---|---|---|

2. Special menu items must be within the nutritional guidelines and must have approval from the Corporate Food Service Director.

3. Facilities will also be authorized to offer special menu items (or enhancements to the normal menu) as an incentive or reward to segments of the inmate/detainee population for special performance.

**F. Religious Diets**

1. All GEO facilities will provide special religious diets for inmates/detainees whose religious beliefs require adherence to strict religious dietary requirements.

2. Requests for religious diets that involve illegal substances or food items that pose a threat to the security of the facility will be denied.

3. Religious diets must be approved in writing by the Chaplain.

4. Religious diet prescriptions will be submitted by the Chaplin in specific and complete written form to the Food Service Manager, and rewritten on a monthly.

5. Facility staff will monitor an inmate's/detainee's adherence to their religious diet.

6. An inmate/detainee will be deemed to have violated the religious diet if they:

   a. Consume items purchased from the commissary that is not in line with the claimed religious diet;

   b. Consume other inmates'/detainees' meals, (or items from their meals), that do not conform to their claimed religious diet;

   c. Do not consume the religious food that is served.

7. If an inmate/detainee violates their claimed religious diet they will be placed back on the menu served to the general population.

8. All religious diets will be reviewed on a monthly basis.

**G. Special Management Diet ("Food Loaf")**

1. Inmates/detainees who are segregated in a Special Management Housing Units for repeated misuse of their meals, (i.e. throwing them on staff; clogging locking mechanisms with food; clogging toilets; using food item to manufacture alcohol, etc), may be fed "food loaf" at each meal.

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1   for review and concurrence prior to issuance of the NTP.  Once
2   concurrence has been granted, these plans, policies and
3   procedures shall not be modified without the prior written
4   acknowledgment of the CO.

5   If the BOP determines the contractor is capable of accepting
6   inmates, the NTP will be issued.  The contractor shall begin
7   accepting inmates within 30 days after issuance of the NTP.

8   It is anticipated that the BOP will predominantly designate
9   individuals committed as DC sentenced felons to the institution.
10   However, the BOP may designate any inmate within its custody
11   utilizing the same designation criteria as used at other BOP
12   facilities.  P.S. 5100.06, Security Designation and Custody
13   Classification Manual, outlines the procedures for designating
14   inmates.

15   Designations to the institution are anticipated to occur at an
16   estimated rate of 40 inmates per week.  The estimated weekly
17   designation of 40 inmates to the institution will result in the
18   population meeting the 1,200 bed requirement in 30 weeks.  The
19   institution designation schedule of 40 inmates per week is an
20   estimate only.  Actual designations will depend upon many
21   factors, including but not limited to, the contractor's ability
22   to provide services in accordance with the SOW; the sentencing of
23   offenders by the DC and Federal Courts; the designation of
24   offenders by the BOP.

25   Unless otherwise indicated, the contractor shall furnish all
26   personnel, management, equipment, supplies and services necessary
27   for performance of all aspects of the contract.

28   Unless explicitly stated otherwise, the contractor is responsible
29   for all costs associated with and incurred as part of providing
30   the services outlined in this contract.

31   B.  Contract Compliance

32   All services and programs shall comply with the SOW; the U.S.
33   Constitution; all applicable Federal, state and local laws and
34   regulations; applicable Presidential Executive Orders (E.O.); all
35   applicable case law, consent decrees, and Court Orders.  Should a
36   conflict exist between any of the aforementioned standards, the
37   most stringent shall apply.  When a conflict exists and a
38   conclusion cannot be made as to which standard is more stringent,

*DISTRICT OF COLUMBIA SENTENCED FELON - Phase II - STATEMENT OF WORK*
*Request for Proposal PCC-0004*

1  the CO shall determine the appropriate standard.  The contractor
2  shall comply with and implement any applicable changes to BOP
3  policy, DOJ regulations, Congressional mandate, Federal law, DC
4  law, or E.O.  Should the Government invoke such changes the
5  contractor retains its rights and remedies under the terms and
6  conditions of the contract.

7  The BOP reserves its rights to conduct announced and unannounced
8  inspections of any aspect of contract performance at any time and
9  by any method in order to assess contract compliance.

10  C.  General Administration

11  Unless otherwise specified by the CO, the contractor is required
12  to perform in accordance with the most current edition of the ACA
13  Standards for Adult Correctional Institutions and Standards
14  Supplement.

15  The contractor shall obtain ACA accreditation within 24 months of
16  NTP and shall maintain continual compliance with the above
17  referenced ACA standards and supplements during performance of
18  the contract, unless otherwise specified by the BOP.  Once full
19  accreditation has been obtained, the contractor shall maintain
20  this accreditation throughout the life of the contract, inclusive
21  of any option year exercised.  Failure to perform in accordance
22  with contract requirements and to obtain ACA accreditation within
23  24 months of NTP will, at a minimum, result in a reduction of the
24  contract price.

25  Accomplishment of some ACA standards is augmented by BOP policy
26  and/or procedure.  In these instances, the SOW identifies and
27  provides direction for the enhanced requirements.

28  The contractor is responsible for a Quality Control Program (QCP)
29  which ensures all requirements of this SOW are achieved.  The
30  specific requirements for the QCP are detailed in Section J,
31  Attachments 2, 3, and 4 of the contract.

32  Several sections of this SOW require the contractor to maintain a
33  system of records identical to the BOP's.  The contractor shall
34  not establish a separate system of records without prior written
35  concurrence by the CO.  This requirement is necessary to maintain
36  consistency of inmate records as inmates transfer throughout the
37  BOP.

7